IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

SHANTA PERSAUD,

    **Plaintiff,**

    v.                               **CIVIL NO. 2:12cv661**

CAROLYN W. COLVIN,
Acting Commissioner of the Social
Security Administration,

    **Defendant.**

## ORDER

This matter comes before the court on the Plaintiff's Motion for Summary Judgment, filed March 14, 2013, and on the Defendant's Motion for Summary Judgment, filed April 11, 2013. The Plaintiff is seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the Plaintiff's claim for disability insurance benefits under the Social Security Act.

On February 12, 2013, the Motions were referred to United States Magistrate Judge Douglas E. Miller, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Federal Rule of Civil Procedure 72(b), for a report and recommendation for the disposition of the Motions.

The Report and Recommendation was filed on October 2, 2013. The Magistrate Judge recommended vacating the Commissioner's decision and remanding the case for further administrative proceedings consistent with the Report and Recommendation. By copy of the Report and Recommendation, the parties were advised of their right to file written objections to

1

the findings and recommendations made by the Magistrate Judge. The Defendant's Objections to

the Magistrate Judge's Report and Recommendation were filed on October 17, 2013, and the

Plaintiff's Response to the Objections was filed on October 24, 2013.

The court, having examined the Objections and Response to the Objections to the Report

and Recommendation and having made *de novo* findings with respect thereto, does hereby adopt

and approve the findings and recommendations set forth in the Report and Recommendation of

the United States Magistrate Judge filed November 18, 2013. Accordingly, the Defendant's

Motion for Summary Judgment is **DENIED**. The Plaintiff's Motion for Summary Judgment is

**DENIED** to the extent that it seeks an order directing an award of Social Security Disability

benefits, and is **GRANTED** to the extent it seeks remand of this case. The Commissioner's

decision is **VACATED** and **REMANDED** for further administrative proceedings consistent with

this Order and the Report and Recommendation.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Douma
Senior United States District Judge
UNITED STATES DISTRICT JUDGE

Norfolk, VA
January *13*, 2014

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Shanta Persaud seeks judicial review of the decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her claim for disability insurance

under Title II of the Social Security Act. 42 U.S.C. §§ 401-434. She alleges several errors,

2

including a claim that the administrative law judge ("ALJ") improperly weighed a Department of Veterans Affairs' ("VA") finding that she was disabled. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B).

After reviewing the entire record, the undersigned finds that the Fourth Circuit's decision in Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012) mandates remand to permit the ALJ to re-evaluate Persaud's VA disability rating. Accordingly, this report recommends that the final decision of the Commissioner be vacated and the matter remanded for further review.

## I.    PROCEDURAL BACKGROUND

On April 3, 2008, Persaud filed her initial application for disability insurance benefits ("DIB"), alleging disability beginning March 1, 2008 due to right shoulder bursitis, back pain, migraines, sinus problems and insomnia. (R. 77, 79). The Commissioner denied her application initially and upon reconsideration. (R. 77). Persaud then requested an administrative hearing, which was conducted on November 5, 2008. Id.

Administrative Law Judge ("ALJ") Tom Duann concluded that Persaud was not disabled within the meaning of the Social Security Act and denied her claim for DIB on December 8, 2009. (R. 74-87). The Appeals Council denied review of the ALJ's decision (R. 88), thereby making the ALJ's decision the final decision of the Commissioner. Persaud made no further appeal at that time.

On March 29, 2011, Persaud filed a second application for DIB, alleging disability beginning December 9, 2009 due to right shoulder bursitis, back pain, migraines, insomnia, tendinitis, sinusitis, and limited motion of the right arm. (R. 94, 204-11). The Commissioner

3

denied her application initially and upon reconsideration. (R. 115). Persaud then requested an administrative hearing, which was conducted on November 16, 2011. (R. 53-73, 115).

Administrative Law Judge O. Price Dodson determined that Persaud was not disabled within the meaning of the Social Security Act and denied her claim for DIB on December 8, 2011. (R. 115-122). The Appeals Council, however, remanded, directing the ALJ to reconsider a medical source statement from Dr. Anita Sager and evaluate post-hearing evidence from Dr. Sager which implied more severe limitations. (R. 127-29). Another hearing was held on May 16, 2012, (R. 34-52), and on June 13, 2012, the ALJ again denied Persaud's claim for DIB. (R. 15-29). The Appeals Council, this time, denied review of the ALJ's decision (R. 1-3), thereby making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), on November 26, 2012, Persaud filed this action seeking judicial review of the Commissioner's final decision. (ECF No. 1). This case is now before the Court to resolve the parties' cross-motions for summary judgment. (ECF Nos. 8, 10).

## II.   FACTUAL BACKGROUND

Persaud, a veteran of the first Gulf War, was born on December 5, 1963, and was forty-six years old at the alleged onset of disability in her second application for DIB. (R. 94, 204). Persaud served on active duty in the United States Navy from March 25, 1986 to March 31, 2006 (R. 204, 303). During that time, she worked as a dental technician. (R. 60). Subsequently, Persaud worked as an administrative assistant for an insurance brokerage firm from 2006 until 2008. (R. 59, 99).

In a September 11, 2008 decision, the VA found that Persaud had service-connected disabilities of sinusitis with allergic rhinitis, migraine headaches, shoulder bursitis, and bilateral chondromalacia patella. (R. 305). This finding warranted a grant of disability severity benefits

4

based on the VA's determination of "individual unemployability" effective February 27, 2008. (R. 305, 309). At the time of the hearing on her claim for Social Security Disability, Persaud received both VA disability benefits and her military retirement. (R. 39, 59).

All of Persaud's treatment has occurred at the VA Medical Center in Hampton, Virginia ("VAMC"). There, Persaud primarily treated with Dr. Anita Sager. (R. 529). In a March 2008 letter addressing Persaud's inability to continue employment, Dr. Sager summarized Persaud's disabilities at that time. Id. She indicated that Persaud suffered from shoulder and back pain, loss of the use of her right arm, and severe migraines. Id. Specifically, according to Dr. Sager, the shoulder and back pain prevented Persaud from sitting comfortably at a desk for more than ten minutes, she could not abduct her right arm greater than forty degrees, and her migraines were "accompanied by dizziness and photosensitivity which make it difficult, if not impossible, to work." Id. Dr. Sager also indicated that non-sedating pain medication had been ineffective, and stronger pain medication had been too sedative to allow for daily employment. Accordingly, Dr. Sager considered Persaud "not employable." Id.

In January 2009, Dr. Sager signed a DMV Certificate of Disability affirming that Persaud was "100% permanently and totally disabled." (R. 354). She indicated that Persaud's permanent disability prevented her from walking 200 feet without rest. Id. In the years since, Persaud has continued treating at the VAMC for her various ailments.

On April 5, 2010, Persaud visited Dr. Sager for a follow-up appointment. (R. 456-59). She reported neck pain and slight congestion. (R.457-58). Additionally, she complained of having pain in her upper back for the previous month, which had since been getting better. Id. Further, Dr. Sager observed that Persaud's migraines were rare. (R. 457). On the same day, however, as part of her routine health maintenance, Persaud reported to the attending nurse that

5

she was suffering from a dull pain localized in her head at an intensity level of 5 out of 10. (R. 461). She claimed that nothing worsened or relieved the discomfort. (R. 462).

On September 27, 2010, Persaud complained of flatfoot pain. (R. 428). Dr. Alberto Orosco, the treating podiatrist, noted that she "is a recreational runner/walker, but had to decrease this activity due to discomfort." Id. Following his exam, he diagnosed her with pes planus. (R. 431). Films of her feet, taken on July 8, 2010, revealed no acute osseous findings and no significant degenerative changes, but did indicate the presence of small heel spurs. (R. 498). At a follow-up appointment on June 15, 2011, Dr. Orosco re-characterized his initial assessment to "adult acquired flatfoot with pain along tibialis posterior tendon." (R. 488).

On February 1, 2011, Persaud had a routine appointment with Dr. Sager. (R. 412-14). While Dr. Sager observed that Persaud appeared "alert and oriented," she also noted "slight frontal sinus tenderness" and "slightly swollen" turbinates. (R. 414). Ultimately, she diagnosed Persaud with rhinitis, neck pain (to be managed with Tylenol), anemia, and insomnia. Id.

At a follow-up visit with Dr. Sager on June 23, 2011, Persaud's chief complaint was difficulty in using her left arm. (R. 476). Dr. Sager's notes also indicate that Persaud had stable neck/back pain and difficulty with her feet. Id. Additionally, Persaud reported that her migraines were coming back. (R. 477). During her examination, Dr. Sager found mild sinus tenderness and congestion, tenderness in Persaud's left shoulder with a painful range of motion around ninety degrees, and an inability to reach her hand below her lower back. (R. 478). Screens of Persaud's left shoulder taken the same day revealed minimal degenerative changes in the left acromioclavicular joint, but no bone abnormality or dislocation. (R. 483). Given her findings, Dr. Sager diagnosed Persaud with a left shoulder rotator cuff strain, foot pain (the extent of which to be determined by the results of a pending MRI), chronic sinusitis/rhinitis, and

6

continued migraines. Id.

An MRI of Persaud's left ankle was taken on July 15, 2011, and was compared with plain films of the left foot taken a year earlier on July 8, 2010. (R. 484). Dr. Orosco, the treating podiatrist, found slight fluid within the ankle joint and mild degenerative change at the ankle joint, the subtalar joint, and the talonavicular joint. Additionally, Dr. Orosco noted that the tibial tendon appeared to be intact, and there appeared to be a chronic or old tear with scarring of the deltoid ligament. (R. 485).

Persaud again visited Dr. Sager on September 29, 2011 for a routine follow-up. (R. 519-21). She reported foot, ankle, and left shoulder pain. (R. 519). Dr. Sager's notes indicate repeat findings of "sinus tenderness" and a tender left shoulder with decreased range of motion. Additionally, she observed that Persaud had flat feet, slight swelling, and tenderness in the left ankle. In an effort to alleviate some of Persaud's recurring issues, Dr. Sager referred her for new custom orthotics, recommended a lace-up brace for her ankle pain, and referred her to an orthopedic surgeon regarding her left shoulder pain. (R. 521).

During an orthopedic consultation conducted by Dr. Jerry Watson on January 20, 2012, Persaud complained of pain in her left shoulder and left knee. (R. 570). She explained that she had had pain in her right shoulder which had improved with medication, but now her left shoulder has since been hurting "only with ROM" and that her existing medication had been ineffective. Additionally, her left knee had started hurting three months prior to the consultation with no aggravating injury. Id. Following his interview with Persaud, Dr. Watson was unable to assess the extent of her compliance with previously prescribed medication plans. (R. 571). His physical exam revealed that Persaud's left shoulder was tender and that abduction was limited to sixty degrees. Her left knee was also tender, but had good range of motion and stability.

7

Ultimately, Dr. Watson diagnosed Persaud with pes anserinus bursitis in the left knee and adhesive capsulitis in the left shoulder, and recommended she continue a Motrin prescription and start a home physical therapy program. (R. 572).

Ten days later, on January 30, 2012, Persaud visited Dr. Sager for another follow-up appointment, where she complained of continued pain in her left shoulder. (R. 538). During her examination, Dr. Sager noted that Persaud's shoulder still had a limited range of motion, and that Persaud's left knee locked at one point, causing her to fall over into the chair. Id. Despite these ailments, however, Persaud apparently found that yoga and kickboxing "help[ed] some." (R. 540).

On February 13, 2012, Persaud had a follow-up appointment with her podiatrist, Dr. Orosco. (R. 556-59). Dr. Orosco noted that she continued to experience pain in both feet with prolonged walking, and that "[h]er pain has remained recalcitrant . . . ." (R. 556). Further, an MRI revealed arthritic changes in her right foot, along with a collection of fluid in her right ankle, and intrinsic tearing along the left deltoid ligament with midfoot arthritis. (R. 559).

Dr. Sager summarized her treatment of Persaud in a medical evaluation report dated February 10, 2012. (R. 532-34). There, she reported that she has treated Persaud since 2007 for her shoulder (numbness, pain, and limited range of motion), inability to engage in fine manipulation, chronic knee, ankle and foot pain, limited ability to stand or walk, bilateral foot pain, and severe migraines. (R. 532). Dr. Sager indicated that Persaud's level of pain cause an inability to focus and stay on task in a workplace environment 80% of the day. Id. She also indicated that Persaud's conditions require extra rest breaks during the day, forcing her to be off task in a workplace environment for more than one hour during a typical eight-hour day. Id. Additionally, Dr. Sager opined that Persaud requires an average of five days per month of

bedrest, and is unable to work full time at any level of exertion. (R. 532-33).

While the bulk of her medical records relate to her physical conditions, Persaud also was treated at the VAMC for potential mental impairments. On July 8, 2010, a depression screening came back negative. (R. 451, 504). Persaud did not seek treatment again until January 30, 2012 at the request of Dr. Sager. (R. 548). On that date, Persaud treated with Dr. Naheed Saleem, a staff physician with the VA. Id. Though she was referred by Dr. Sager for PTSD treatment, Persaud's chief complaint was that her "[m]ood is irritable." Id. Dr. Saleem found no evidence of psychotic symptoms and considered Persaud to be "fair[ly]" cooperative with no suicidal or homicidal ideations. Id. at 550. While she had decent insight and judgment, Persaud's affect was "extremely irritable." Id. Nevertheless, Dr. Saleem determined that Persaud did not suffer from PTSD. Id. Rather, he diagnosed her with generalized anxiety disorder, and assigned a global assessment of functioning ("GAF") score of 52.[1] Id.

In addition to the medical evidence, Persaud testified that she is unable to perform full-time employment because of a combination of physical issues. (R. 40-47, 63-67). Her biggest problem, she claimed, is walking. (R. 63). She described "stabbing pain" and having to wear a brace for her knee and both feet. (R. 63-64). Additionally, Persaud testified that the "throbbing and stabbing" pain in her left shoulder also prevents her ability to work. (R. 65). According to her, the shoulder pain has negatively impacted her lower back since she has been leaning to one side to accommodate that pain. Id. She described the issue with her lower back as "[t]hrobbing and very achy pain." Id. Further, Persaud testified that she suffers from migraines two or three

---

[1] The GAF scale is a numeric scale (0 through 100) sometimes used for reporting the clinician's judgment of an individual's overall level of functioning at a specific point in time. A GAF score in the 51-60 range indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders Text Revision 34 (4th ed. 2000). In its later revision, the DSM stopped utilizing the GAF scale, due in part to its "conceptual lack of clarity." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

times a week, causing light sensitivity, nausea, and occasional vomiting. (R. 66).

Persaud also testified that on an average day she wakes up late, takes her medicine and eats a light meal, then lays down with a heating pad and ice pack on her propped-up leg for the remainder of the day, only rising to eat and take other doses of medication. (R. 60-61). Of a typical eight-hour day, Persaud indicated that she spends between seven and eight hours reclining with her legs/feet elevated due to the pain. (R. 68). She explained that she does little cooking because she has begun to leave the stove on, and she hardly cleans because of the negative effects of aerosol fumes and the dust created by vacuuming. (R. 61). She did report that she did her own "very limited" grocery shopping. (R. 62). Additionally, Persaud testified that she limits her driving to emergencies since, "[b]ecause of the medicine I'm on, I don't trust myself driving." (R. 39).

The ALJ also heard from Robert Edwards, a vocational expert ("VE"). (R. 18). The VE described Persaud's prior employment as a dental assistant with the military as light skilled and the receptionist/office clerk position as light, semi-skilled. (R. 47). The VE testified, in response to hypothetical limitations framed by the ALJ,[2] that Persaud could perform the jobs of information clerk, office helper, and unarmed security guard – all light, unskilled work. (R. 49). Additionally, the VE stated that no jobs would be available for a hypothetical individual who, due to a combination of medical conditions and the previous limitations set forth by the ALJ, is unable to work a forty-hour, five-day work-week with strict limitations in their ability to stand, walk, and lift. (R. 50).

## III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to

---

[2] The ALJ asked the VE to assume a forty-eight year old individual with a high school education and similar work history as Persaud, capable of light exertion with the ability to alternate between sitting and standing, but unable to reach overhead. (R. 48).

determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### IV.    ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

11

The Social Security Regulations define "disability" as the:

Inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five

establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A.    The ALJ's Decision

In this case, the ALJ made the following findings under the five part analysis: (1) the ALJ found that Persaud had not engaged in substantial gainful activity since December 9, 2009, the alleged onset date; (2) Persaud had severe impairments of right shoulder bursitis,[3] s/p back sprain, sinus problems, insomnia, and left shoulder strain and left ankle/foot degenerative joint disease effective June 2011; (3) her combination of impairments did not meet the severity of one of the listed impairments in Appendix 1; and (4) Persaud had the RFC to perform light work permitting periodic alteration between sitting and standing. Additionally, the ALJ concluded that Persaud could not perform her past relevant work as a dental assistant, but did retain the capacity to perform her past relevant work as a receptionist/office clerk. (R. 27). Finally, he identified jobs which exist in substantial numbers in the national economy which Persaud could perform. (R. 18-29).

---

[3] The ALJ indicated that he has adopted Persaud's right shoulder bursitis as a severe impairment "adopted from the previous [ALJ] decision." (R. 23, 79).

In her motion for summary judgment, Persaud argues four errors by the ALJ which she asserts require remand. First, she claims the ALJ failed to properly weigh the VA finding that she was completely disabled. She also contends that the ALJ improperly rejected Dr. Sager's opinion. Additionally, Persaud argues that the ALJ improperly evaluated her "medically determinable mental impairments" of anxiety and migraines. Lastly, Persaud maintains that the ALJ's RFC finding is not supported by substantial evidence. (ECF Nos. 8, 9).

For the reasons set forth in detail below, this report concludes that a post-hearing change in Fourth Circuit precedent mandates remand for the ALJ to perform a more detailed analysis of Persaud's VA disability rating. The ALJ's other findings, including his assessment of Persaud's credibility and evaluation of the treatment evidence from her primary physician, Dr. Sager, appear to be well supported by the evidence. Nonetheless, the new requirement to afford her VA rating "substantial weight," or justify a decision to afford it less weight, requires remand in light of the restrictive RFC found by the ALJ and the other evidence in the case supporting his conclusion that Persaud was not disabled.

**B.**     **The Commissioner's final decision did not adequately evaluate evidence of the VA's prior finding that Persaud was completely disabled in light of new Fourth Circuit precedent requiring that the VA's finding be given "substantial weight."**

At the time of the hearing before the ALJ, the VA had found Persaud disabled based on medical and other evidence establishing "individual unemployabilty." Though the ALJ had access to extensive VA medical records, he gave little weight to the VA's disability rating, despite recognizing that "when another agency or company indicates that an individual is 'unable to work' or 'unemployable', it is understandable that the claimant would conclude that he or she

14

must be disabled for purposes of Social Security." (R. 26). These findings, he observed, result purely from the application of that other agency or company's rules. Because Social Security rules must be applied in this case, he concluded, "the Veteran's Administration findings are not binding . . . ." Id.

Social Security regulations require the ALJ to consider decisions by other governmental agencies related to the claimant's disability. Although not binding, the regulations suggest that the ALJ should "explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." Williams v. Astrue, No. 5:11-CV-286-FL, 2012 WL 3240467, at *9 (E.D.N.C. Apr. 4, 2012) (unpublished) (quoting SSR 06-3P). In this case, the ALJ's explanation was commensurate with the evidence in the record before him concerning the VA's determination, and Fourth Circuit precedent at the time. See Williams, 2012 WL 3240467 at *9; Barnett v. Astrue, No. 3:10-CV-1316, 2012 WL 75046, at *16 (S.D. W. Va. Jan. 10, 2012) ("When comparing the standards for establishing disability promulgated by the SSA to the less exacting standards employed by the VA, the ALJ's decision to give 'little weight' to the VA determination is entirely reasonable.").

After the hearing and the Appeals Council's denial of review, however, the Fourth Circuit decided Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012). The new opinion held that the SSA must give "substantial weight" to a VA disability rating. Id. at 343. Like Williams, the Bird opinion acknowledged that the SSA and VA apply different standards, but also noted that both "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability," and both require extensive medical documentation. Id. As a result, a disability rating by one of the two agencies is "highly relevant to the disability determination of the other." Id. The opinion also recognized, however, that the

15

"SSA employs its own standards for evaluating a claimant's alleged disability, and [] the effective date of coverage . . . under the two programs will likely vary." Id. As a result, even under the new rule announced in Bird, the Commissioner may give less weight to a VA rating "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." Id.

Persaud's Motion for Summary Judgment argues that the ALJ erred by not according "substantial weight" to the VA's disability determination. (ECF No. 9 at 19). As a result, she argues that Bird requires reversal. Id. The Commissioner contends that the ALJ already afforded careful consideration to the VA's disability rating and clearly demonstrated the reasons for giving it little weight. Specifically, she argues that Bird "is factually and legally inapposite" to Persaud's case. (ECF No. 11 at 14). A review of the record, she claims, reveals that Persaud remains "remarkably functional despite her impairments," Id. at 14, and that the VA's opinions were unsupported by the evidence. Because "an ALJ may give less weight to the VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate," Bird, 699 F.3d at 343, the Commissioner maintains that the ALJ acted appropriately in rendering a decision in this case.

It is true that the ALJ carefully evaluated all of the medical evidence and considered the VA's rating to the extent the evidence presented it. However, his analysis was based on the law as it existed before the Fourth Circuit addressed "the precise weight that the SSA must afford to a VA disability rating." Bird, 699 F.3d at 343. After carefully reviewing the ALJ's analysis and the record, the undersigned is unable to conclude that the ALJ's analysis after Bird is supported by substantial evidence, or that the ALJ would have reached the same conclusion in light of the new standard.

Importantly, the record before the ALJ included adequate evidence of the VA's decision-

16

making process and the medical conditions and other evidence it relied upon in concluding Persaud was unemployable. (R. 303-309). While the ALJ referenced the VA's determination, he did not discuss its analysis in detail, instead concluding only that the result was "not binding" on the Commissioner. Without more, the undersigned cannot determine that the ALJ intended to deviate from the Fourth Circuit's new presumption.

The Commissioner noted that Persaud's VA disability was based almost entirely on the opinion of her primary physician, Dr. Sager. Because the ALJ carefully analyzed Dr. Sager's records and afforded her opinion only minimal weight, the Commissioner argues no remand is required because the same analysis would apply to the VA's finding. Although this is a correct statement of the law prior to Bird, it cannot be sustained under current precedent.

This is because prior to Bird, the law did not require any specific weight be assigned to the VA's finding. Bird, 699 F.3d at 343 ("We have not previously addressed the precise weight that the SSA must afford to a VA disability rating."). Applying the old precedent, the ALJ in this case stated that "[a]s Social Security rules must be used in this assessment of disability, the Veteran's Administration findings are not binding . . . ." (R. 26). The Commissioner, in briefing before this Court, has correctly observed that SSA determinations are based on different rules with different burdens of proof, and thus he argues Bird does not apply because those different standards and different rules demonstrated the reason behind the ALJ's deviation from the VA's decision. But, it is not clear that the ALJ's treatment of Persaud's VA medical records was intended to clearly demonstrate the reasons for according the VA's disability determination little – rather than substantial – weight.

The Fourth Circuit has now made it clear that the ALJ must give the VA's disability determination "substantial weight" or explicitly detail the reasons for giving it less weight. See

Bird, 699 F.3d at 343. The reasons cited by the Commissioner in Persaud's case – different rules and different standards – would apply to every case and thus cannot be relied upon to avoid scrutiny of the VA decision under Bird's new presumptive standard. Because the ALJ did not know to conduct this analysis, and did not in fact conduct it, the undersigned is unable to determine whether substantial evidence supports the ALJ's denial of benefits. Therefore, remand is necessary in order to allow the ALJ to weigh the evidence of Persaud's VA rating in accordance with Bird.

This is not to suggest that the ALJ's conclusions on RFC could not be sustained under the new standard. The Fourth Circuit specifically identified the fact that "the SSA employs its own standards for evaluating a claimant's alleged disability" as one ground which may justify deviation from substantial weight. The ALJ may conclude on the evidence presented by Persaud's case, that those different standards are material to Persaud's claim for disability and rightly justify departing from the substantial weight presumption. Here, however, the ALJ performed the analysis from a different starting point, and as a result, remand is the appropriate remedy.

The Commissioner argues that the limited weight afforded to the opinions of Persaud's treating physician, Dr. Sager, already demonstrates his presumed intention to assign her VA rating limited weight. The ALJ specifically discounted Dr. Sager's opinion that Persaud's impairments prevented all work. He noted, correctly, that her treatment had been extremely conservative, with largely over-the-counter remedies, exercise, and home-therapy. He rejected her claims of disabling migraines, noting they were discussed in much less severe language in the medical records. He wrote that her claim that she limited her driving and other activities due to a fear of side effects from her medications was flatly contradicted by the medical evidence,

18

which revealed no instances of a received change in medication or new complaints of intolerable side effects.

In short, the ALJ might well conclude on this record that Persaud's VA rating should be given substantially less weight than the Fourth Circuit's presumption requires. But that analysis is for the ALJ to perform in the first instance. It is not the job of a reviewing court to substitute its own analysis of the evidence. In the absence of an explanation why the VA rating is afforded less weight, remand is the appropriate remedy. See Chirico v. Astrue, No. 3:10-CV-689, 2011 WL 6371315 (E.D. Va. Nov. 21, 2011) report and recommendation adopted, 3:10-CV-689-JRS, 2011 WL 6396586 (E.D. Va. Dec. 20, 2011) (citing Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) (holding that a magistrate judge erred "in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's opinion should have been evaluated based solely on the reasons stated in the decision.")).

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court DENY the Commissioner's Motion for Summary Judgment (ECF No. 13), GRANT Persaud's Motion for Summary Judgment (ECF No. 11), and vacate the prior decision and remand the case for further consideration in light of the changes in law concerning Persaud's disability rating, and its impact on this claim for benefits.